[No. 38277. Department Two. September 8, 1966.]

BERNADINE HOLLOWAY, *Respondent*, v. TILLMAN OWEN HOLLOWAY, *Appellant*.*

*Reported in 417 P.2d 961.

*James Warren Cook* and *Johnson, Jonson & Inslee,* for appellant.

DONWORTH, J.—Appellant has appealed from an order adjudging him to be in contempt of court for failure to pay his former wife $100 per month pursuant to the provisions of a certain promissory note for $5,000, which was executed by him and delivered to her under the circumstances described below. The order sentenced appellant to serve 90 days in the Chelan county jail with the proviso that he might purge himself of contempt by paying $2,700 into the registry of the court within 60 days from March 10, 1965, and by keeping the $100 per month payments current beginning August 12, 1964, by paying that amount into the registry of the court on the 12th of each month thereafter until his obligation had been paid in full.

Appellant and respondent were married in 1943. No children were born of this marriage, but appellant had adopted his wife's son by a former marriage. At the time of their divorce, the son was 21 years of age.

In 1958, the parties separated and have never lived together thereafter. March 15, 1961, respondent commenced a divorce proceeding against appellant in Chelan County. She alleged that appellant had left their home in July, 1958, and thereafter he had refused to live with her as her husband and had refused to support her, except that he allowed her to keep the proceeds of the sale of their home amounting to $4,100. She also alleged that he had inflicted personal indignities upon her rendering life burdensome.

April 27, 1961 (while the divorce proceeding was pending) the parties executed a property settlement agreement. It consisted of 11 paragraphs and recited that the parties thereto "are now desirous of fully, finally, and forever effecting a settlement and disposition of their property rights without the necessity of the intervention of the court."

The property division which the parties agreed upon was substantially as follows:

(1) and (2) Two parcels of real estate (one being their home in Wenatchee) were quitclaimed to their son, who

agreed to assume and pay the installment payments to become due with respect to the parcel which the parties were buying on contract.

(3) Respondent was to have as her separate property the household goods in their home and her personal items.

(4) The provision of the agreement regarding the promissory note was as follows:

4. The defendant shall execute a note in favor of the plaintiff for the payment of Five Thousand ($5,000.00) Dollars payable at One Hundred ($100.00) Dollars or more per month until paid, and bearing no interest. Payments on said note are to be made on or before the 12th day of each month beginning April 12, 1961. Defendant has a right to pay, in addition to the monthly payments, any or all of the remaining balance on said note at any time.

(5) Appellant was to have as his separate property all bank accounts and all equipment, accounts receivable and all property owned by the parties under the name of "Holloway Construction Company" and his personal items.

(6) Appellant was to pay $300 as attorney fees to the attorney for services in the contemplated divorce action. (This attorney is not representing either party in the present contempt proceeding.)

(7) Appellant agreed to pay all debts owed by either of the parties on April 27, 1961. Thereafter, each party was to pay his or her own obligations.

The last four paragraphs of the property settlement agreement read as follows:

8. The parties agree that this arrangement with respect to their property rights and the payment of money by the defendant to the plaintiff, subject to the approval of the court, shall constitute a full and complete settlement of all their property rights and if the suit for divorce is prosecuted to final judgment by the plaintiff, neither party will claim, assert, or demand of or against the other any relief different than is embodied in this agreement and will not assert, one as against the other, any claim or demand that is inconsistent or contrary to the terms hereof.

9. The parties hereto are not contracting that either one or the other shall obtain a divorce, but if a divorce

should be obtained, appropriate provisions shall be embodied therein obligating the parties to carry out the terms of this agreement and to perform the same in accordance with the terms hereof.

10. It is understood and agreed that no inducements or promises of any kind or nature have been made or extended from either of the parties to the other which has induced the execution of this agreement and that the same embodies in its entirety the agreement between the parties in relation to the disposition of their property rights and that there is no other agreement existing between them with reference to such property rights.

11. It is understood and agreed by the parties that this property settlement agreement shall be final and binding whether or not a divorce is granted or obtained by either party.

The hearing on the divorce complaint took place before a court commissioner on June 27, 1961. Respondent appeared with the attorney referred to above. Appellant did not appear because (as he later stated in an affidavit in this proceeding) he did not have sufficient funds to employ his own attorney. He, therefore, allowed his wife's attorney to prepare the necessary papers for both of them, including the property settlement agreement.

After the hearing of respondent's evidence in support of her complaint for a divorce, the court commissioner entered findings of fact, conclusions of law and a decree of divorce granting respondent a divorce from appellant.

These documents made reference to the property settlement agreement as follows:

Finding of fact No. 6 found

That plaintiff and defendant have entered into a property settlement agreement in writing which has been filed as an exhibit herein and by reference is made a part hereof; that the property settlement agreement is fair and reasonable and the same should be approved and confirmed. In accordance with the terms and provisions of the property settlement agreement, plaintiff and defendant have transferred their real property to their son, Rockne T. Holloway; that the plaintiff is entitled to have as her sole and separate property the household furniture, furnishings, dishes and bedding and other household

articles located at the family home at 26 East Hawler Street, Wenatchee, Washington; that the defendant is entitled to have as his sole and separate property all of the equipment, income, accounts receivable and all property owned by the parties hereto under the name of "Holloway Construction Company", together with his personal items, miscellaneous tools and equipment.

Conclusions of law Nos. 2 and 3 stated that:

II. The property settlement agreement between the parties shall be confirmed; the plaintiff shall be awarded as her sole and separate property the household furniture, furnishings, dishes, bedding and other household articles.

III. That defendant shall have awarded to him the equipment, the accounts receivable, and all property owned by him under the name of "Holloway Construction Company".

The decree contained similar provisions as follows:

It is further Ordered, Adjudged and Decreed that the property settlement agreement between the parties shall be confirmed; the plaintiff shall be awarded as her sole and separate property the household furniture, furnishings, dishes, bedding and other household articles.

It is further Ordered, Adjudged and Decreed that the defendant be and he is hereby awarded as his sole and separate property the equipment, accounts receivable and all property owned by him under the name of "Holloway Construction Company".

In accordance with the property settlement agreement of April 27, 1961, appellant executed, on May 15, 1961, and delivered to respondent the following instrument:

INSTALLMENT PROMISSORY NOTE

$5,000.00     May 15, 1961, Wenatchee, Washington

I promise to pay to the order of Bernadine Holloway Five Thousand ($5,000.00) Dollars in lawful money of the United States of America with no interest thereon, payable in monthly installments of not less than $100.00 in any one payment, the first payment to be made on the 12th day of May, 1961, in the amount of $200.00 and a payment in the amount of $100.00 on the 12th day of each month thereafter until the entire principal has been paid. If any installment is not so paid, the whole sum of the principal is to become immediately and collectible at the

option of the holder hereof and in case of any such default, interest shall be charged on any payment in default in the amount of three per cent per month and in case action or suit is instituted to collect this note or any portion thereof, I promise to pay such additional sum as the court may adjudge reasonable as attorney fees and for the costs of such action.

Due August 12, 1965.

This note was made and delivered about 6 weeks prior to the entry of the divorce decree.

Appellant thereafter paid to respondent the total sum of $900 on the principal of the note.

August 24, 1962, appellant and his second wife filed in the United States District Court for the Eastern District of Washington, a voluntary Petition in Bankruptcy and were adjudicated as bankrupts. They filed a schedule listing many unsecured creditors (including respondent as creditor in the amount of $4,100 under divorce settlement).

November 21, 1963, appellant received an order signed by the Referee in Bankruptcy discharging him from all provable debts except such as are not dischargeable under the Bankruptcy Act.

May 15, 1964, respondent filed in the divorce action a motion for an order requiring appellant to appear before the Superior Court for Chelan County to show cause why he should not be held in contempt of court for his failure to comply with the terms of the property settlement agreement and decree of divorce by which he was required to pay his former wife the balance due and owing on the promissory note provided for therein.

This motion was supported by respondent's affidavit in which she stated (*inter alia*) that this note was given in recognition of appellant's duty to support his former wife.

The superior court issued a show cause order in accordance with this motion, and appellant appeared and moved to quash the order on three grounds: (1) that show cause proceedings were not the proper proceedings to enforce compliance with the property settlement agreement and note; (2) that the note was given in settlement of the

parties' respective property rights pending the final disposition of the divorce action and was not made a part of the decree, and (3) that the indebtedness represented by the promissory note was discharged in the bankruptcy proceedings.

The matter was heard by the superior court on July 27, 1964, and on the following day the presiding judge filed a 6-page memorandum decision. The court, after discussing *Decker v. Decker*, 52 Wn.2d 456, 326 P.2d 332 (1958), and *Brantley v. Brantley*, 54 Wn.2d 717, 344 P.2d 731 (1959), held that the provision in the property settlement agreement to pay $5,000 at the rate of $100 constituted support for respondent, and, therefore, was not a dischargeable debt under 11 U.S.C.A. § 35 (a), which provides in part as follows:

A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities . . . for alimony due or to become due, or for maintenance or support of wife or child, . . . .

The court concluded its memorandum opinion as follows:

Therefore, defendant's Motion to Quash is hereby denied and the defendant is found to be in contempt of the order of this Court and is hereby sentenced to ninety (90) days in the Chelan County jail, provided that the defendant may purge himself of said contempt and imprisonment by paying into the registry of the Chelan County Clerk the sum of Two Thousand Seven Hundred Dollars (2,700.00) within sixty (60) days of this date, and further, by keeping the One Hundred Dollar ($100.00) monthly payments current, starting with August 12, 1964, and on the 12th day of each month thereafter, said monthly payments also to be made to the registry of the Chelan County Clerk.

In arriving at the above set forth figures it will be noted that the Court is enforcing the order of the Court and not the note which is Exhibit 2 herein.[1]

---

[1] While the trial court stated that it was enforcing the provision of the divorce decree and not the promissory note, we have treated the provisions of paragraph 4 of the property settlement agreement and the divorce decree confirming it and the promissory note executed by appellant pursuant thereto as constituting one obligation. Hence, our references to each should be understood as including the other two.

Appellant moved for reconsideration of this decision, for entry of his proposed findings of fact, and an order granting his motion to quash the show cause order. This motion was supported by affidavits of appellant and his counsel.

March 10, 1965, the court held a hearing and entered an order denying appellant's motion. It entered the findings of fact, conclusions of law, and order adjudging appellant to be in contempt, which were submitted by respondent.

March 31, 1965, appellant filed his notice of appeal to this court from the trial court's order. Respondent has not filed a brief in this court and there has been no oral argument presented on her behalf.

■ The trial court acknowledged that appellant had presented a prima facie case to show that the note was discharged in bankruptcy. Respondent had the burden of proving that the note was not discharged in the bankruptcy proceeding. See *Zerega Distrib. Co. v. Gough*, 52 Wn.2d 443, 325 P.2d 894 (1958), and *Emigh v. Lohnes*, 21 Wn.2d 913, 153 P.2d 869 (1944). Respondent had the burden of proving that the note represented a liability of appellant "for alimony due or to become due, or for maintenance or support of wife or child" within the meaning of 11 U.S.C.A. § 35(a).

Appellant has assigned error to the entering of findings of fact No. 5 and No. 6 by the trial court and to its conclusions of law No. 1 and No. 2.

In substance these findings and conclusions refer to the language of the findings and the decree made by the court in the divorce proceeding in 1961 and the wording of the property settlement agreement. The trial court, in this contempt proceeding, construed these documents and concluded that they constituted "a sufficient Order directing the defendant [appellant] to perform the payment above-referred to, so that it may be enforced by contempt proceedings." The trial court further concluded the provision in the property settlement agreement regarding the $5,000 note was not part of the property division made by the parties but was for the purpose of providing support for respondent. Consequently, the trial court held that appellant's indebt-

edness to respondent was not discharged in appellant's bankruptcy proceeding.

We disagree with the trial court's construction of the property settlement agreement and with its conclusion that the provision therein concerning the $5,000 promissory note may be enforced by contempt proceedings.

The pertinent portions of the property settlement agreement and the record in the divorce proceedings are either quoted or paraphrased above.

We think that the language contained in these documents clearly shows that the intention of the parties was to make a full and complete settlement of all their property rights and that they specifically agreed that neither party would assert against the other any claim that was inconsistent or contrary to its terms. This agreement was confirmed in the divorce decree.

Furthermore, the situation of the parties at the time the agreement was signed on April 27, 1961, should not be overlooked. Between the time when the parties separated in July, 1958, and April, 1961, respondent, with appellant's consent, had received $4,100, which was the total proceeds of the sale of their former home in Wenatchee. During this period, respondent was employed by her brother in his business as secretary and bookkeeper. Appellant was engaged in operating a construction business, which was owned by the community composed of appellant and his first wife, known as the Holloway Construction Company. Under the divorce decree, appellant received only the assets of that company, besides his personal items, as his share of the property.

By the agreement, the parties agreed to quitclaim two parcels of real estate to their 21-year-old son. Respondent received the household goods and her personal items.

In view of the situation of the parties in April, 1961, and the language of the agreement, we are of the opinion that the parties intended that the giving of the $5,000 note by appellant to respondent was, in effect, to compensate her for her community half interest in the Holloway Construction Company.

If it were intended to represent alimony payments of $100 per month for 50 months payable by appellant for respondent's support, it seems clear to us that the property settlement agreement would have so stated. In our opinion, every reasonable inference from the language of the agreement indicates very strongly that the parties intended it to be a property settlement agreement and nothing else.

While it is unfortunate that the business known as the Holloway Construction Company failed about 15 months after the divorce decree was entered, if the marriage of the parties had continued for that period, presumably respondent and her son would have lost the parcels of real estate which they received under the agreement, since this property would presumably have been scheduled in the bankruptcy proceeding as an asset of the community composed of appellant and respondent, who would then have been adjudicated bankrupts instead of appellant and his second wife.

■ The trial court's memorandum opinion indicates that the trial court treated finding of fact No. 6 as a mixed finding of fact and conclusion of law in which it was strongly inclined toward finding in favor of respondent because of what the trial court believed was a clear expression of public policy contained in *Decker v. Decker*, *supra*, and *Brantley v. Brantley*, *supra*, in which this court stated, in effect, that the state has a great interest in enforcing the responsibilities of a husband to support his wife, regardless of the fact that the parties may have denominated the support payments to be a property settlement agreement. However, the trial court did not take into consideration an equally strong public policy in this state which is to the effect that a wife is not entitled to support when she has no need for the support. *Morgan v. Morgan*, 59 Wn.2d 639, 369 P.2d 516 (1962); *Young v. Young*, 47 Wn.2d 497, 288 P.2d 463 (1955), and cases cited therein. In *Morgan v. Morgan, supra* at 642, we stated:

> Alimony is not a matter of right. When the wife has the ability to earn a living, it is not the policy of the law of this state to give her a perpetual lien on her divorced

husband's future income. *Warning v. Warning*, 40 Wn. (2d) 903, 247 P. (2d) 249 (1952); *Lockhart v. Lockhart*, 145 Wash. 210, 259 Pac. 385 (1927).

The criterion adopted by this court for the allowance of alimony includes two factors: (1) the necessities of the wife, and (2) the financial ability of the husband. *Murray v. Murray*, 26 Wn. (2d) 370, 174 P. (2d) 296 (1946); *Duncan v. Duncan*, 25 Wn. (2d) 843, 172 P. (2d) 210 (1946).

The *Decker* case, *supra* at 467, recognizes this important qualification on the responsibility of a husband to support a wife by stating:

> In the superior court hearing, the trial court made no finding as to whether there is a reasonable relation between the provision here sought to be enforced through contempt proceedings and the duty of respondent to support appellant. This is a question of fact, all things considered, including the factor of possible defenses to the debts by the husband and wife. Respondent did not question the validity of any of the debts; and there is nothing in the record to indicate that he and appellant have any *bona fide* defenses to any or all of the debts. If, on remand, respondent can show that he and appellant have valid defenses to any of the debts, then he will have established *pro tanto* that the provision relative to the payment of community debts bears no reasonable relation to his duty to support appellant.

The question the trial court should have considered in this instance in the present case is whether, under the facts of this case, there was any relation between the note provided for in the property settlement agreement and appellant's duty to support respondent at the time of entry of the divorce decree on which this contempt order is based.

We are of the opinion that the affidavits in the record, the circumstances of the divorce shown by the pleadings in that suit, and the divorce decree rendered following the default of appellant indicate that respondent had no need for maintenance or support at the time of her divorce, because (1) she was working and supporting herself prior to her divorce, during the pendency of her divorce proceeding, and after her divorce was granted,

(2) appellant had assumed all their existing debts, and (3) there were no unemancipated children in need of support. Respondent's divorce complaint prayed for such maintenance and support as the court might consider appropriate. However, there was no indication in the record that any request for maintenance and support was made in the findings of fact, conclusions of law, or in the divorce decree presented to the trial court by her then counsel at the time of the entry of the default divorce. In any event, the court commissioner was not convinced that such maintenance and support were needed. It is clear that respondent did not receive any relief in the divorce proceedings which bears any reasonable relationship to her need for support because she has never, either at the time of her divorce or at the time of this contempt hearing, shown that she has had a need for maintenance and support. We believe that respondent has totally failed to present any evidence to support any showing that this note had any reasonable relationship to any *duty* on the part of appellant to support her after her divorce.

This view of the record is amply supported by appellant's affidavit and the property settlement agreement itself. Respondent's claim at the contempt hearing that the provision for the note was intended to be for her maintenance and support is not supported by any evidence in the record tending to show that she was entitled to such relief at the time of the divorce. The trial court erred in its entry of its finding of fact No. 6. The conclusions of law based on finding of fact No. 6 are, therefore, also in error.

Under the rule of *Zerega Distrib. Co. v. Gough, supra,* and *Emigh v. Lohnes, supra,* respondent has failed to sustain her burden of proving that appellant's note is not dischargeable in bankruptcy.

■ It is a recognized principle of law that obligations arising in connection with property settlements wherein one spouse gives to the other a note which is intended for the purpose of making an equitable division of their property is discharged by bankruptcy. *Fernandes v. Pitta,* 47 Cal. App. 2d 248, 117 P.2d 728 (1941); *Tropp v. Tropp,*

129 Cal. App. 62, 18 P.2d 385 (1933). We adopt the reasoning of those cases and their conclusions of law concerning the dischargeability of such obligations when they are "debts" arising from property settlement agreements as distinguished from obligations to pay maintenance and support to a former wife or toward the support of children. Although these cases are factually somewhat different, the principles are the same. Since the note given by appellant to respondent in the present case is a part of their division of property provided for in their property settlement agreement, it follows that the note was discharged in the bankruptcy proceeding. Appellant's motion to quash the show cause order should have been granted by the trial court accordingly.

One other matter should be briefly mentioned. The trial court, in its memorandum opinion, correctly states that no evidence was presented by affidavit or otherwise to show that appellant did not have the financial ability to comply with the court's order.

However, appellant, in support of his motion for reconsideration, offered to show by affidavit that he had remarried and had two children as the result of this marriage. He set forth a list of his assets and a statement of his current income and living expenses which he claimed showed his inability to comply with the order which was to be entered by the court in accordance with its memorandum opinion. His motion to be permitted to make such showing was denied.

We do not pass upon the merits of appellant's claim or upon the trial court's denial of his motion. We simply note the possibility that, even though it be assumed arguendo that his indebtedness was not dischargeable in bankruptcy, there is some question whether appellant should be ordered to be confined in jail for 90 days if he could establish his financial inability to pay his wife $2,700 within 60 days and make monthly payments of $100 thereafter for 14 months.

Since, in our opinion, appellant's obligation to pay the balance of $4,100 to respondent was discharged in bank-

ruptcy because respondent failed to sustain her burden of proving that the debt was not dischargeable under 11 U.S.C.A. § 35 (a), we hold that his obligation was discharged by the order of the referee dated November 21, 1963, above referred to.

We, therefore, must reverse the trial court order finding appellant in contempt for failure to pay the balance of the principal of this note. The case is remanded to the trial court with instructions to dismiss the order to show cause on the ground that appellant has shown that the note was discharged in bankruptcy. It is so ordered.

ROSELLINI, C. J., WEAVER and HAMILTON, JJ., and LANGEN-BACH, J. Pro Tem., concur.