[No. 232-41111-2.    Division Two.    February 2, 1971.]

SYLVERINE FONTENOT MOSE, *Respondent,* v. MURPHY MC-KINLEY MOSE, *Appellant.*

*F. Curtis Hilton,* for appellant.

*Tanner & Burgess* and *Jack E. Tanner,* for respondent.

PEARSON, J.—This is an appeal from the part of a divorce decree awarding the plaintiff, Sylverine Mose, permanent alimony of $100 per month from defendant, Murphy Mose. Alimony was not requested in the complaint, nor emphasized in the testimony, which was limited to that of the parties. Alimony was first asserted by plaintiff's counsel in the closing statement.

The parties were married on December 15, 1945. At the time of the divorce, plaintiff and defendant were age 40 and 44 years, respectively. They had eight children during the marriage, five of whom were still dependent. The children ranged in age from 4 years to 16 years.

The testimony established without dispute that defendant had recently been retired after 23 years' service with the United States Army, having achieved a Master Sergeant (E-7) rating. His military pension was $291 per month. Because of heart disease, the sum of $241 was denominated a disability pension and was received from the Veterans' Administration. The sum of $50 per month was received from the army retirement fund.[1]

In addition to the pension, defendant was employed as a counselor at Cascadia Diagnostic Center, where his gross pay was $482 per month. He also worked part time at a

---

[1]Had defendant not retired with a physical disability, his army pension would have also totaled $291 per month.

service station at Ft. Lewis, where he earned an additional monthly amount of approximately $140. Consequently, his gross monthly income was $913.

Plaintiff was employed full time at Madigan General Hospital, where her gross income was $400 per month. She testified that her take-home pay was $295 per month. This testimony was accepted by the trial court and such finding is not challenged on appeal.

The parties had acquired community property consisting of a home equity of approximately $4,000, furnishings valued at $2,000, a 1963 Ford, and a 1966 Renault automobile (no value established), 10 shares of stock in Keystone, Inc. (no value established), and various life insurance policies (with no cash surrender value), with face values of approximately $22,000. The community debts exceeded $5,000 at the time of trial.

The debts, largely in the form of credit union or bank loans, were being paid by defendant by way of monthly payroll deductions. The trial court found that defendant's net take-home pay was $697.16 per month (including his pension) and the finding has not been specifically challenged by defendant.

The final decree awarded plaintiff the home, furnishings, and the Renault automobile. It required her to pay two bills of uncertain amount, which she had incurred since the parties separated. We assume, although the decree is silent in this regard, that she was required to assume the mortgage balance on the home awarded to her of $14,446, with monthly payments of $136.

Defendant was awarded the 1963 Ford and the life insurance policies and the 10 shares of Keystone, Inc. stock. He was required to make the children irrevocable beneficiaries on the policies until all of the children were of age or self-supporting. He was likewise required to assume the balance of the community indebtedness (approximately $5,000) and to pay plaintiff's attorney's fees of $400.

Child support was fixed at $250 per month to reduce by $40 as each child became of age or self-supporting. Plaintiff

was allowed $100 per month permanent alimony (not to terminate upon her remarriage). No specific finding was made which related to plaintiff's financial need for alimony, other than a general finding (findings of fact 5) that although plaintiff was employed, she was not in good health and that defendant was in good health and was steadily employed with a net take-home pay of approximately $697.16 per month.

From our review of the court's oral decision, it appears that the $100 permanent monthly award was not intended as alimony as such. The trial court believed that plaintiff should receive a monthly portion of defendant's pension rights (which the trial court computed at $59,000, by reducing it to present cash value), as her share of a fixed community asset.

With reference to her financial needs, plaintiff itemized monthly expenses for herself and the family of $622.97. With reference to her health, she testified: "Q. Have you medical disability of any kind? A. No. Q. Have you ever been hospitalized? A. I have been hospitalized. Q. Other than the children? A. I've had operations for varicose veins. Q. Do your legs bother you now? A. Yes, when I stand a lot."[2]

Defendant's testimony concerning his health was limited to the following: "Q. What was your physical disability that you were retired on? A. Cardiovascular disease, sir, and slight cardiac tremor."

Defendant has challenged the trial court's finding that he was in good health and the finding that plaintiff was not in good health. He also challenges the conclusion that he should pay permanent monthly alimony of $100.

The initial question presented by this appeal is whether or not the trial court has the discretion in a divorce action to award alimony where the wife does not claim it until her closing argument after both parties have rested. This question has not previously been considered by the Supreme

---

[2] It appears that the job in food service work at Madigan General Hospital required plaintiff to stand all the time.

Court or the Court of Appeals, although the Supreme Court has held that in a default divorce, it is improper to award alimony where the complaint does not request such relief. *Ermey v. Ermey*, 18 Wn.2d 544, 139 P.2d 1016 (1943). It is not specifically provided for in the court rules.

■■ We think this question must be answered in part by a consideration of the criteria for awarding alimony in this state. In *Kelso v. Kelso*, 75 Wn.2d 24, 27, 448 P.2d 499 (1968) the rule and policy of alimony awards was succinctly stated:

> We have said before, and we now repeat, that alimony is not awarded as a matter of right. Whether or not it should be awarded depends upon the necessities of the wife and the financial ability of the husband to pay. The facts of the case are therefore the determinants. [Citing cases.] Unless there is need there should be no alimony. That is the public policy in this state. *Holloway v. Holloway*, 69 Wn.2d 243, 417 P.2d 961 (1966).

We note also that permanent alimony is disfavored in this state. *Berg v. Berg*, 72 Wn.2d 532, 434 P.2d 1 (1967) and *Kelso v. Kelso, supra*. Various circumstances are to be considered by the trial court in making an award of alimony, the more important of which are the age, earning capacity, health, and education of both parties. The trial court may also consider other factors, such as the restricted earning capacity of the wife who must care for minor children, and the prior financial contributions of the wife to the marriage.[3] *See Kelso v. Kelso, supra*.

It can be expected that if the wife claims alimony in her complaint, the husband is put on notice that he must prepare his case for trial and pursue, in pretrial discovery, those matters and circumstances outlined above, which affect a determination of alimony.

It can also be expected that if alimony is asserted at the outset of a trial as a potential issue to be tried, the husband is still in a position, at least by direct and cross-examination, to pursue the matters and circumstances which the court must consider before making such an award.

---

[3]Plaintiff had worked some 14 years of her married life.

We think the better practice is to plead alimony specifically, but no cases have been cited to us, and we have found no court rule or decision making such practice mandatory. CR 8(a) requires only that a pleading contain a short and plain statement of the claim, showing that the pleader is entitled to relief, and a demand for judgment for the relief to which he deems himself entitled. A request for divorce, by law, brings before the court all of the marital rights of the parties and requires the court to make a full and final determination (except as to custody and support) of all such rights. RCW 26.08.110. Such fact is well known to members of the bench and bar of this state. Also, the notice pleading concept inherent in the rules anticipates that the issues to be tried will be delineated by pretrial discovery.

Inherent in the question before us, while not specifically demonstrated by the record, are the customary practicalities of the pretrial handling of divorce cases where no substantial assets are involved and where the earnings of the parties are stretched to accommodate expenses occasioned by the necessity of providing separate living arrangements. In such cases, the attorneys are not prone to add to the expenses by depositions or other formal discovery proceedings. Instead, the issues to be tried are normally narrowed by oral negotiations and the trial court apprised of those contested issues by opening statements. If alimony is to be claimed, both parties will usually be aware of it, at least at the commencement of the trial.

In the case before us, plaintiff made no opening statement, nor has she supplied us with a brief. There is nothing in the record which would contradict defendant's assertion that no notice of an alimony claim was made until plaintiff's closing statement.

We note, however, that when alimony was brought up in final argument, defendant did not object to the trial court's considering the question of alimony, nor did he seek a continuance so that the matter could be pursued in more depth. In fact, defendant advised the court: "I would just

point out to the court that my understanding of the case is that on these pensions the court had the right to award alimony out of them." Accordingly, the trial court was not apprised of any prejudice to defendant from his lack of notice that alimony was sought.

We hold that for a wife in a divorce action to claim alimony, such claim must be asserted at such stage of the proceedings as to give the husband reasonable notice and an opportunity to present his side of the issue. Such stage would normally be at the commencement of the trial. However, such right of reasonable notice of the claim may be waived by failing to object, by failing to seek to reopen, by failing to seek a continuance, or by failing to apprise the trial court of the prejudice of having the issue considered without further evidence. We think such lack of notice was waived in this case. Since the trial court had before it for disposition the entire marital rights of the parties, it was not error to consider an award of alimony if the evidence supported such an award.

■ Does the evidence support a finding that plaintiff needs and defendant is able to pay $100 monthly alimony, under the criteria set forth above? We note first the case of *Roach v. Roach,* 72 Wn.2d 144, 147, 432 P.2d 579 (1967), which bears on the relationship of the military pension to grants of alimony:

> Federal military pensions are subject to certain contingencies set out by federal statute. As such it is not a fixed asset but is an emolument or economic advantage of office. *McLean v. United States,* 226 U.S. 374, 57 L. Ed. 260, 33 Sup. Ct. 122 (1912). It is an income resource which should be considered by the court in fixing the amount of the alimony award.

Consequently, while the trial court may have been in technical error in computing the present cash value of the pension and distributing it as property, the trial court was fully justified in adding the monthly pension to defendant's other earnings as bearing on his ability to pay alimony.

The difficulty with the alimony award in this case, however, is twofold:

(1) It was not based upon a finding of plaintiff's present financial need, other than findings of fact 5, which referred to her bad health and defendant's good health.

(2) There was no finding made, nor is there evidence which would support, a *permanent* alimony award under Washington law.

With reference to plaintiff's health, we do not think the record shows that her health adversely affected her earning capacity or would likely affect it within the foreseeable future. On the other hand, defendant's medical disability based upon heart disease is far more ominous as to his future ability to hold a full-time job, as well as a part-time position.

However, other unchallenged evidence was before the court, tending to show plaintiff's need for alimony. She testified that her monthly financial obligations for use in supporting herself and five children were $622. Of this sum, $50 was for home care expenses, while she was away at work. The award for $250 as child support, coupled with her net earnings of $295, would still leave her $77 short of the amount necessary to maintain her home. Defendant, on the other hand, according to the unchallenged findings, had take-home earnings of $697 (including his pension) for his own support, which established his ability to pay alimony.

We think, therefore, that the evidence warranted a finding of the need for temporary alimony. We are unable to say that an award of $100 was an abuse of discretion. However, since the need largely revolved around plaintiff's need to maintain a home for five children, which need will diminish as the children come of age, we do not believe that permanent alimony was proper.

In *Morgan v. Morgan,* 59 Wn.2d 639, 642, 369 P.2d 516 (1962), the following explicit statement of policy appears:

> Alimony is not a matter of right. When the wife has the ability to earn a living, it is not the policy of the law of this state to give her a perpetual lien on her divorced husband's future income.

To the same effect, *see Dakin v. Dakin,* 62 Wn.2d 687, 384

P.2d 639 (1963); *Hogberg v. Hogberg*, 64 Wn.2d 617, 393 P.2d 291 (1964).

Following this policy and applying it to the facts of this case, we conclude that alimony of $100 per month should be allowed for 5 years from the date of the decree, to terminate sooner if plaintiff should remarry.

Affirmed as modified.

PETRIE, C. J., and ARMSTRONG, J., concur.