In re James Dale HOOVER, Debtor.

Lovetta M. HOOVER, Plaintiff,

v.

James Dale HOOVER, Defendant.

**Bankruptcy No. 80–0467.
Related Case: 80–01289.**

United States Bankruptcy Court,
N. D. Ohio, W. D.

Aug. 24, 1981.

Nancy M. Scranton, Fremont, Ohio, for plaintiff.

Stewart H. Aron, Toledo, Ohio, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause came to be heard upon the Plaintiff's Complaint to Determine Dischargeability of a Debt and Complaint to Deny Discharge. Both parties request judgment based upon the pleadings, affidavit, and memoranda filed with this Court.

## FACTS

This Court makes the following findings of facts:

1.) Plaintiff, Lovetta M. Hoover and Defendant, James Dale Hoover were divorced in Erie County Common Pleas Court, on November 2, 1978. No children were born of this marriage.

2.) A "Property Settlement and Separation Agreement" was incorporated into and made part of the decree of divorce. The pertinent parts of this agreement are as follows:

" . . . WHEREAS, Husband and Wife are desirous of forever and absolutely settling the following:

(A) Past, present and future support of Wife;

(B) Rights to any and all property, real or personal, each may have by virtue of the marriage here involved;

(C) All other benefits and privileges conferred, as well as obligations imposed, on each by virtue of the marriage here involved.

NOW, THEREFORE, in consideration of the foregoing as well as the mutual promises and undertakings hereafter specified, Husband and Wife agree: . . .

2. *PERSONAL PROPERTY.*

(a) Wife shall receive, free and clear of any interest of Husband, the net proceeds flowing from the Hoover to Henry real estate transaction, . . . being of a sum stipulated as not less than Eight Thousand Four Hundred ($8,400.00) Dollars.

(b) Wife shall receive from Husband a promissory note in the amount of Eleven Thousand Six Hundred ($11,600.00) Dollars, said promissory note to bear interest at a rate of Eight Per Cent (8%) per annum from January 5, 1979. Monthly installments upon said promissory note shall be of an amount equal to Five Hundred ($500.00) Dollars each, the first such installment being due on the said January 5, 1979 date.

(c) Wife shall receive from Husband two separate mortgages, one being in an

amount equal to Four Thousand Six Hundred ($4,600.00) Dollars upon the parties' 910 Ogontz Street property, the other being in an amount equal to Seven Thousand ($7,000.00) Dollars upon the parties' 1002 W. Washington Street, property. Said mortgages shall serve as security for the note referred to in (b) above.

It is further the understanding of the parties that Wife's said mortgages shall be enforceable as, and in fact be, second best liens upon the properties to which they attach.

(d) Wife shall receive the right to accept payment on the promissory note referred to in (b) above at the bank of her choice, . . .

(e) Wife shall receive the following items of household goods: . . .

(f) Husband shall receive, free and clear of any interest of Wife, the business known as Factory Furniture Outlet, including therewith all inventory, equipment and accounts receivable.

(g) Husband shall receive the following motor vehicles: . . .

(h) Husband shall receive the following items of jewelry:

Combination wedding set with three (3) rows of diamonds,

Dinner ring with three (3) rows of diamonds,

Diamond watch with diamond watch band,

Ruby and diamond ring,

Sapphire and diamond ring,

Emerald and diamond ring,

Diamond necklace (1 stone),

Diamond earrings (dangles with three (3) diamonds each)

Heart-shaped diamond ring,

Amethyst and diamond ring,

Starburst necklace (1 diamond),

Opal earrings,

Opal cross necklace,

Opal and diamond ring,

Pearl earrings,

Pearl and diamond ring,

Blue Linde-Star ring,

Heart-shaped earrings (1 diamond each),

Locket necklace (1 diamond), and

Pearl necklace.

(i) Husband shall receive Wife's interest in the mortgage note, . . .

(j) Husband shall receive all . . . household good . . . not disposed of herein.

(k) Husband shall pay and indemnify and hold Wife forever harmless from any and all debts incurred by the parties jointly or severally . . .

3. *REAL PROPERTY.* Wife shall quit claim . . . any and all interest . . . in . . . real estates: . . .

6. *MUTUAL RELEASES.* It is the understanding of the parties that the agreement here made, except as otherwise provided, forever and completely adjusts, settles, disposes of and terminates any and all rights, claims and benefits each presently has or may have arising from their marriage or otherwise, and whether the same be conferred by the statutory or common law of Ohio, any other state or the United States of America, and which are now or which may hereafter be in force or effect. Rights, claims and benefits here contemplated include, but are by no means limited, to, the following:

(a) Any and all past, present and future support;

(b) Any and all rights to a division of property;

(c) Any and all rights of dower;

(d) Any and all rights of alimony;

(d) Any and all rights to act as fiduciary in the estate of the other;

(e) Any and all rights to a distributive share in the estate of the other;

(f) Any and all rights of exemption in the estate of the other; and

(g) Any and all other property right or rights, benefits or privileges accruing to either party by virtue of their marriage, one to the other. . . . . "

3.) During the marriage, Defendant, James Hoover owned and managed a furniture store as well as invested in several real estate ventures.

4.) Plaintiff during the marriage was unemployed but assisted the Defendant in the furniture store.

5.) Since the divorce, Plaintiff has had long periods of unemployment and has had no specific training in any particular areas.

6.) Pursuant to the property settlement incorporated into the divorce, Plaintiff received approximately Eight Thousand Dollars ($8,000) from the sale of a piece of real estate. She also received a promissory note executed by the Defendant in the amount of Eleven Thousand Dollars ($11,600) in addition to two mortgages one being in an amount equal to Four Thousand Dollars ($4,600) upon the parties' 910 Ogontz Street property, the other being in an amount equal to Seven Thousand Dollars ($7,000) upon the parties' 1002 W. Washington Street property. These mortgages were to secure the promissory note of Defendant, James Hoover.

7.) Plaintiff received a total of Seven Hundred Seventy One and Forty Seven and 47/100 Dollars ($771.47) from the foreclosure on the mortgages because Defendant paid no installments on the Eleven Thousand Six Hundred Dollars ($11,600).

8.) Defendant stated in his deposition that he exchanged most of the aforementioned jewelry for furniture to an unknown peddler.

9.) Defendant filed his petition in Bankruptcy on August 8, 1980.

## ISSUES

There are two issues before the Court in this matter.

1.) Plaintiff claims that because Defendant, James Hoover, disposed of or fraudulently transferred or concealed certain valuable items of jewelry and cash with the intent to defraud his creditors, the Defendant should be denied his discharge pursuant to Section 727(a)(2)(A) of the Bankruptcy Reform Act of 1978.

2.) Plaintiff seeks to determine whether under § 523(a)(5) of the Bankruptcy Code, the debt in the Separation Agreement, evidenced by the note and two mortgages should be characterized as maintenance and support, thus being nondischargeable or whether it is in the form of a property settlement and thus dischargeable.

■ As to the first issue, Count II in Plaintiff's Complaint, Plaintiff fails to meet the burden of proof to require denial of Defendant's discharge. In the Answers to Interrogatories filed with this Court on January 23, 1981, specifically Interrogatories 4 and 5, Plaintiff admits to not knowing when Defendant transferred monies and jewelry. This showing of lack of knowledge was buttressed in Plaintiffs' deposition (See pp. 12–23). Defendant's deposition explains that the jewelry sales were made approximately July 1978 through January 1979. Plaintiff produced no evidence to contradict this.

The Code in § 727(a)(2)(A) requires the transfer with the intent to defraud to be made within one year before the date of the filing of the petition in Bankruptcy. The specific language is as follows:

"(a) The court shall grant the debtor a discharge, unless— . . .

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of the petition; or . . . ."

The Debtor-Defendant filed his petition on August 8, 1980, therefore, the transfers would have had to be made on or after August 8, 1979. There is no evidence to indicate that any transfers were made within this period, therefore it is Ordered that Count II of Plaintiff's Complaint be hereby Dismissed.

■ The second issue to be addressed is found in Count I of Plaintiff's Complaint. Section 523(a)(5)(B) of the Bankruptcy Code in pertinent part states the following:

"(a) A discharge under section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt—...

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—...

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support: ..."

In order to determine whether the debt to Plaintiff, evidenced by the promissory note, is maintenance and support or a property settlement, the Court must look to the individual circumstances of each case when applying the law. *In re Brace*, 13 B.R. 551 (N.D.Ohio 1981); *In re Warner*, 5 B.R. 434 (Bkrtcy.C.D.Utah 1980); *In re Evans*, 2 B.R. 85 (Bkrtcy.W.D.Mo.1979).

Cases under the Act were quite clear, in that as stated in *In re Waller*, 494 F.2d 447 (6th Cir. 1974), "the law of Ohio must be resorted to in order to determine what constitutes alimony, maintenance and support...." However, with the enactment of the Bankruptcy Code, this issue has been clouded by the legislative history of § 523 which in pertinent part states the following:

"What constitutes alimony, maintenance, and support, will be determined under the bankruptcy laws, not State law. Thus cases such as *In re Waller*, 494 F.2d 447 (6th Cir. 1974)... are overruled, and the result in cases such as *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1952) is followed."

The thrust of the Bankruptcy Code is directed at rehabilitating the Debtor and allowing him a fresh start, which is the same as it was under the Act. However, the new Bankruptcy Code has made several changes in the law of dischargeability. What was once nondischargeable may now be determined dischargeable. For further discussion of the change in law regarding the alimony issue, see *In re Pelikant*, 5 B.R.

404 (Bkrtcy.N.D.Ill.1980); *In re Warner*, 5 B.R. 434 (Bkrtcy.C.D.Utah 1980); *In re French*, 9 B.R. 464 (Bkrtcy.S.D.Cal.1981).

The Bankruptcy Court is not required to accept as determinative those statements in the divorce or a similar decree that particular debts are in the nature of alimony or property settlement. Rather the Court must look beyond the four corners of the divorce decree and settlement agreement. The substance and nature of the circumstances surrounding the settlement in addition to the written terms will be determinative in the characterization of a debt. Characterization of a debt in a bankruptcy proceeding is a federal question which is governed by federal law and policy. *In re Warner*, supra. Therefore, each case must be decided upon its own merits after a review of the respective facts and surrounding circumstances.

Many considerations may be taken into account by the Court in determining whether the debt is in fact for maintenance and support:

1.) disparity of earning power of the parties,
2.) business opportunities,
3.) level of education,
4.) physical health,
5.) probable future need for support,
6.) fault in breaking up of marriage,
7.) benefits innocent spouse would have received had the marriage continued,
8.) whether the payments are intended as economic security, and
9.) the periodic nature of the debt.

*In re Nunnally*, 506 F.2d 1024 (5th Cir. 1975). The presence of one or more of these factors does not necessarily infer support nor does the absence of one or more infer property settlement. *In re Fox*, 5 B.R. 317 (Bkrtcy.N.D.Tex.1980).

Two cases closely analogous to our factual situation and which deal with these criteria are *Pinkerton v. Pinkerton*, 4 B.C.D. 1043 (N.D.Ga.1978); and *Holloway v. Holloway*, 69 Wash.2d 243, 417 P.2d 961 (1966). Both cases involve the characterization of a debt evidenced by a promissory note.

In the *Pinkerton* case, the note was instituted as a result of the Bankrupt-Defendant's default on the periodic payments of support to his wife. The Court held the note obligation to be nondischargeable. The Court's reasoning was that the original obligation was clearly set forth in the Separation Agreement as a periodic payment for maintenance and support. Therefore, the note which was signed as a result of the default of the original obligation had the same characterization as the original obligation.

The facts of our case are distinguishable from *Pinkerton* in that there has been no similar label placed upon the Eleven Thousand Six Hundred ($11,600) Dollar debt owed to Plaintiff, Lovetta Hoover. The only parallel is that the payments in this case are also periodic in nature.

In *Holloway*, the Court, considering the ex-wife's ability to earn sufficient income to support herself, determined that the note evidencing the debt represented the ex-wife's share of property and not the ex-husband's duty to support. In reversing the trial Court's determination of nondischargeability, the Supreme Court of Washington indicated that the basic consideration should have been whether there was any relation between the note provided for in the security agreement and the Debtor's duty to support his ex-wife. The Court was of the opinion that the circumstances of the case indicated that the ex-wife had no need for maintenance and support because (1) she was working and supporting herself, (2) Appellant-Debtor assumed all their existing marital debts, and (3) there were no children in need of support.

The case *Morgan v. Morgan*, 59 Wash.2d 639, 369 P.2d 516 (1962) as referenced to in *Holloway* presents an important consideration:

> "... the state has a great interest in enforcing the responsibilities of a husband to support his wife, regardless of the fact that the parties may have denominated the support payments to be a property settlement agreement. However, the trial court, did not take into

consideration an equally strong public policy in this state which is to the effect that a wife is not entitled to support when she has no need for the support." *Holloway*, 417 P.2d at 967.

*Holloway* differs from the case at bar in the respect that Mrs. Hoover was not employed during her marriage, and has not been employed most of the time since her divorce. In balancing these interests with our factual situation here, it appears that the interest of enforcing the husband's responsibilities to his wife are paramount.

Defendant finally argues that there was no specific wording in the Order from the Domestic Relations Court requiring him to make any payments, but that he was solely ordered to "execute" the note and mortgages—which he did.

This Court disagrees with the Defendant's interpretation of this facet of the Separation Agreement. The Agreement specifically provides (as set out previously in # 7 of the Facts herein) for the first monthly installment to be *due* commencing January 5, 1979. Although the word "pay" is not mentioned, the inference is not difficult to understand; Defendant was to pay his first monthly installment by January 5, 1979.

This Court believes that these payments were intended for the economic safety of the Plaintiff. The Agreement itself sets out to resolve all past, present and *future* support of the wife. It is clearly within this Court's province to determine what is alimony from what, by its terms, appears to be otherwise. The fact that this debt may have been structured as a property debt in the divorce decree is irrelevant.

The parties, here have an uneven earning capacity. Defendant has owned and managed a furniture store as well as invested in real estate. Even though Defendant allegedly may not presently be working, he is in a much better position to support himself than Plaintiff who has essentially been a housewife and occasional helper in the store. Her standard of living was sure to decline upon the divorce of the parties.

598

It is therefore this Court's Opinion that the liability in this case is in the nature of maintenance and support and therefore nondischargeable.

The prayer of Count I in Plaintiff's Complaint is hereby granted only as to the amount of Ten Thousand Eight Hundred Twenty Eight and 53/100 Dollars ($10,-828.53), which is the balance of the Eleven Thousand Six Hundred Dollar ($11,600) debt remaining after reduction by the Seven Hundred Seventy One and 47/100 Dollars ($771.47) already received by Lovetta Hoover from foreclosure on the mortgages.