In re William John
**BRANDSTADT, Debtor.**

**Judith E. BRANDSTADT, Plaintiff,**

v.

**William John BRANDSTADT,
Defendant.**

**Bankruptcy No. 82–01744.
Adv. No. 82–0973.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

Dec. 6, 1984.

Lawrence S. Huffman, Lima, Ohio, for plaintiff.

Robert L. Balyeat, Lima, Ohio, for defendant.

### OPINION AND ORDER

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the court upon the motion of the Plaintiff, Judith Brandstadt for summary judgment against the Defendant, William John Brandstadt to find a debt incurred by the debtor under the terms of a divorce decree nondischargeable under § 523(a)(5) of the Bankruptcy Code and upon defendant's cross motion for summary judgment.

The plaintiff contends that defendant's debt is nondischargeable because it "actually was in the nature of alimony, maintenance, or support." The court finds that the debt arose from a property settlement and furthermore that there was never any intention that it provide spousal support. Thus the plaintiff's motion for summary judgment must be denied. There being no genuine issue of material fact, the court finds that defendant is entitled to judgment as a matter of law, and plaintiff's complaint should be dismissed with prejudice.

### FACTS

The parties were married on June 6, 1959. The couple had three children all of whom are now emancipated. When the parties were divorced on October 1, 1981 the youngest child was 16 and she was put in the custody of her mother under the divorce decree.

At the time of the divorce both parties were working. Judith Brandstadt, Plaintiff held a teaching position in the Shawnee Consolidated School System and William Brandstadt, Defendant owned and operated the McKee Tool and Supply Company.

The extensive and detailed divorce decree did not have a separate section covering alimony. It did have sections titled: separation, marital duties, custody, visitation, child support, medical expenses, tax exemptions, real estate, household goods and furnishings, motor vehicles, personal effects, life insurance, expenses and debts, employment benefits, future debts, intangible property and other payments. The plaintiff claims that the debt listed in the "other payments" section was actually an alimony payment. The other payments section provides as follows:

## OTHER PAYMENTS

In full and final satisfaction of any and all claims and rights that the Wife may have, the Husband shall pay to the Wife the sum of Thirteen Thousand Eight Hundred Seventy-Five Dollars (13,875.-00). Said sum shall be payable in sixty (60) equal monthly installments of Two Hundred Forty-four Dollars and 69/100 ($244.69) each, which sum includes the interest on the unpaid principal balance at the rate of Twelve Percent (12%) and one final payment of Two Thousand Eight Hundred Seventy-Five Dollars (2,875.00). After the payment of the 60th consecutive monthly installment of Two Hundred Forty-four Dollars and 69/100 ($244.69), the Husband will have reduced the principal balance by Eleven Thousand Dollars ($11,000.00) and the Husband shall pay the principal balance of Two Thousand Eight Hundred Seventy-five Dollars ($2,875.00) on the *30th* day of the sixty-first month.

The defendant argues that the debt represents a property settlement, not alimony. Mr. Brandstadt claims that because his wife was employed at a salary of approximately $17,500.00 per year, healthy, receiving child support for one child at the rate of $125 per week and settled for assets and a note worth $81,125.00 that alimony was never considered.

Defendant in support of his proposition that this debt represents a property settlement, points out that he received assets valued at $94,970.00 while the plaintiff took property with an agreed value of $67,-250.00. To equalize the difference of $27,-720.00 the defendant gave the plaintiff a note in the amount of $13,875.00 the details of which are incorporated in the divorce decree under the heading "other payments."

The defendant filed bankruptcy in August 1982. At that time he had made 10 payments, leaving a balance due of $12,-765.37. This balance was scheduled as a secured debt in defendant's bankruptcy petition. The plaintiff now claims that this balance is nondischargeable under § 523(a)(5) of the Bankruptcy Code.

Both parties have filed motions for summary judgment claiming there is no genuine issue as to any material fact, therefore asking the court to enter judgment as a matter of law on the pleadings.

## DISCUSSION

The sole issue in this case is the dischargeability of a debt owed by the defendant to his ex-spouse the plaintiff, as a result of their divorce. The determinative statutory provision is 11 U.S.C. § 523(a) which excepts from discharge, payments:

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that—

(A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 402(a)(26) of the Social Security Act); or

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support.

Therefore this Court must determine whether the debt in question is merely a property settlement which is dischargeable or if it represents alimony, maintenance or support, which is nondischargeable.

A three part test to determine the dischargeability of a debt incurred pursuant to a divorce proceeding was provided by the United States Court of Appeals for the Sixth Circuit in *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (1983). The first inquiry is "whether the state court or the parties to the divorce *intended* to create an obligation to provide support ..." *Id.* at 1109. If the answer is negative then the discussion ends and the debt is dischargeable. The second part of the test begins "if the bankruptcy court finds, as a threshold matter, that assumption of the debts was

intended as support it must next inquire whether such assumption has the *effect* of providing the support *necessary* to ensure that the daily needs of the former spouse and any children of the marriage are satisfied." *Id.* Again, as with the first part of the test, if a negative answer results which indicates the assumption of the debt is not necessary to provide support, the inquiry ends and the debt is dischargeable. The third step is "having found that the loan assumption has the effect of providing necessary support, the bankruptcy court must finally determine that the amount of support represented by the assumption is not so excessive that it is manifestly unreasonable under traditional concepts of support." *Id.* at 1110. Furthermore, the court in *Calhoun* reminds us that the burden is upon the ex spouse to establish nondischargeability.

To determine whether the state court or the parties to the divorce intended to create an obligation to provide support through the assumption of a debt or incurring a direct obligation to pay the ex spouse, "the bankruptcy court may consider any relevant evidence including those factors utilized by state courts to make a factual determination of intent to create support." *Id.* at 1109. *Calhoun* lists various factors considered by bankruptcy and state courts in considering whether or not the parties intended to create an obligation for support as follows:

> the nature of the obligations assumed (provision of daily necessities indicates support); the structure and language of the parties' agreement or the court's decree; whether other lump sum or periodic payments were also provided; length of the marriage; the existence of children from the marriage; relative earning powers of the parties; age, health and work skills of the parties; the adequacy of support absent the debt assumption; and evidence of negotiation or other understandings as to the intended purpose of the assumption.

*Id.* at 1108 n. 7. Additional factors considered by other bankruptcy courts are "the amount of support the state court would have reasonably granted" (citations omitted) and "whether some provision is made for termination of the debtor's sole responsibility for the assumed obligation upon remarriage of the former spouse or age of majority in the children." (citations omitted) *Id.* at 1108. This court has considered all of the aforementioned factors in searching for the actual intent of the parties when they agreed to the "other payments" section of the divorce decree which represents a debt for $13,875.00.

Unfortunately the plaintiff must have lost sight of the fact that for this debt to be held nondischargeable under § 523(a)(5) she bears the burden of proving that it was intended as alimony or support because at no time did she allege this debt was intended to replace alimony payments. Instead plaintiff's assertions consisted of the following: 1) that to discharge this debt would make a mockery of the law of contracts, 2) that the court should inquire into the defendant's lifestyle because he might belong to a country club, 3) that she admits the amount of the debt was based on the property evaluation but says it was done for tax purposes, 4) that there was a disparity of income at the time of divorce, 5) that she depended on these payments, 6) that she negotiated away her alimony, 7) that if she had known her ex husband would declare bankruptcy she wouldn't have let him sign a promissory note. Plaintiff's last assertion is certainly the most credible.

On the one hand plaintiff readily admits that the debt represents the difference in value of the property each spouse received and that she gave up any rights to alimony. Yet on the other hand she claims to have depended on the payments. Of the many and varied declarations the only ones relevant to this case are the claims of disparity of income and dependence on the payments but plaintiff did not provide any evidence to support these claims.

Plaintiff merely states she was dependent on the payments. She did not offer any budget, or other statements that

would show financial need. On the issue of disparity of income plaintiff relies on a 1980 income tax return which shows the defendant earning $38,900.00 and her income at $17,569.00. Those figures alone do not supply the court with the information it needs to find an intent to provide support. Raw income data does not accurately reflect the financial status of the parties. The defendant recognizing this admits the disparity on the income sheet but then goes on to fill in the picture by explaining that along with the assets he received he also assumed all of the debts of the marriage which were considerable. In fact when the defendant's debts as well as his income are compared with plaintiff's salary, interest income and child support, the plaintiff may have had more disposable income than the defendant.

Unlike the plaintiff, the defendant through his counsel focused his motion on the issue of intent. Defendant asks the court to find this debt was merely a property settlement which was never connected with alimony or support and he substantiates his claim with affidavits.

First Mr. Brandstadt illustrates the basis of the $13,875.00 note. Defendant states in his motion "under the division of property finally agreed upon by the parties the defendant took assets valued at $94,970.00 and the plaintiff received property with an agreed valuation of $67,250.00. To equalize the difference of $27,720.00 the defendant gave the plaintiff a note in the amount of $13,875.00 amortized over 5 years at 12% annum in 60 equal installments of $244.69 and one (1) final payment of $2,875.00." As previously noted the plaintiff admits in her motion that the note was based on a property settlement.

Next the defendant argues that the short term of the note should indicate that it was intended as a property settlement and not for the purpose of providing support. While the note called for payments to be made over a 5 year period the defendant's attorney for his divorce stated in an affidavit that originally the plaintiff demanded a lump sum payment and that only after

weeks of negotiation was the longer period agreed upon. Courts have considered the nature and duration of payments finding that short term payments are more likely to indicate a property settlement than payments made over a substantial period of time. *See Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984).

Traditionally the courts and the I.R.S. in an effort to differentiate between support payments and property settlements have considered what terminates the debt. Certainly if a party is concerned about receiving payments to provide for the basic necessities they would not agree to terminate them until something occurred which would alleviate their need. Often times the terminating event has been death or remarriage but these are by no means totally inclusive of all the possibilities. Conversely a debt for property settlement is for a fixed sum over a shorter period of time. In this case the only terminating factor was the final payment of a definite sum representing a property division. In this case it clearly indicates that the debt was not intended to provide alimony or support. *See Shaver, supra* at 1316.

The defendant has consistently denied that alimony was ever considered by him and if it ever was the intent of the plaintiff it was waived because of other assets received in the divorce decree. In support of this assertion the defendant refers to a letter addressed to defendant's attorney for the divorce, James King dated August 21 from plaintiff's attorney Lawrence Huffman which states as follows: "you stated you do not feel this is an alimony case. Without arguing that matter out or conceding your opinion we are willing to compromise the alimony issue by fixing the child support at $150.00 per week. In light of Jill's birthday, December 11, 1965, Mr. Brandstadt would be free of all alimony and support obligations in just over two years." Plaintiff in her motion for summary judgment admits that her right to alimony was negotiated away. On the foregoing facts it is impossible for the court to find

anything but that the debt did not represent alimony.

Finally, the defendant lists some of the reasons why he never considered that his ex spouse would need alimony. Defendant's reasons coincide with the factors considered by the court in *In re Hoover,* 14 B.R. 592, 596 (N.D.Ohio W.D.1981) when it was trying to determine the nature of a promissory note given to a former spouse. Among those considerations were 1) disparity of earning power, 2) business opportunities, 3) level of education, 4) physical health and 5) provable need for future support.

In the present matter the plaintiff was earning approximately $17,500.00. Her salary coupled with child support payments of $6,500.00 and additional income from her stocks and other real estate provided her with a disposable income equal to or in excess of the defendant's. The plaintiff holds a degree in education and has done work toward a masters degree. Furthermore she is in good health and no longer has any unemancipated children at home. Considering all of the previous factors and plaintiff's failure to dispute them the court cannot find that the plaintiff depended on these payments for her support.

Taking all of the various factors into consideration the court finds that the plaintiff never met her burden of proving the debt was intended as alimony or support and that the defendant demonstrated conclusively that the promissory note was based on a property settlement and was thus dischargeable. According to *Calhoun* the inquiry stops once it is established that the obligation was not intended as alimony or support. However, it is interesting to note that the plaintiff is a teacher earning at least $17,500.00 per year, with no dependents from this marriage, is now remarried, and still has all the assets she received from the divorce decree while the debtor lost all of his assets that he took according to the divorce, earns less than $1,000 a month on commissions and lives in an apartment. From these facts it appears the plaintiff wouldn't have fared any better had she made it past the threshold question of intent.

In light of the foregoing reasons, it is hereby,

ORDERED that plaintiff's motion for summary judgment be, and it hereby is, denied. It is further,

ORDERED that plaintiff's complaint be, and it hereby is, dismissed with prejudice. It is further,

ORDERED that defendant's debt to plaintiff be, and it hereby is, discharged.